**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Saidi O.,                                              Civ. No. 20-790 (WMW/BRT)

               Petitioner,

v.                                                        **REPORT AND**
                                                         **RECOMMENDATION**
DHS/ICE,

               Respondent.

Saidi O., A-206-482-972, Douglas County DOC, 710 South 17th Street, Omaha, NE 68102, *pro se* Petitioner.

Adam J. Hoskins, Esq., Ana H. Voss, Esq., and Ann M. Bildsen, Esq., United States Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

        In this petition for a writ of habeas corpus under 28 U.S.C. § 2241, Petitioner Saidi O. requests release from immigration detention pending his removal from the United States. (Doc. No. 1, Habeas Pet.) For the reasons stated below, this Court recommends that Petitioner's action be dismissed.

**I.       Background**

        Petitioner is a native and citizen of Nigeria who was admitted to the United States on or about May 31, 2005, as a non-immigrant visitor on a P-1 visa, with a departure date of no later than December 23, 2005. (Doc. No. 11, Kresser Decl. ¶ 4.) On March 26, 2019, ICE agents encountered Petitioner at the Mahaska County Jail in Oskaloosa, Iowa during routine Criminal Alien Program duties. (*Id.* ¶ 5.) Petitioner had been arrested for

disorderly conduct, and ICE's record check revealed that Petitioner had remained in the United States beyond December 23, 2005, without authorization. (*Id.*) Consequently, an Immigration Detainer, Form I-247 was issued. (*Id.*)

On March 27, 2019, ICE arrested Petitioner at the jail and served him a Notice to Appear for removal proceedings at the Des Moines ICE office. (*Id.* ¶ 6.) Petitioner was charged under Section 237(a)(1)(B) of the Immigration and Nationality Act for remaining in the United States for a time longer than permitted. (*Id.*; *see* Doc. No. 11-1 at 3–4.) That same day, ICE also served Petitioner with a Notice of Custody Determination, Form I-286, advising him of the determination to detain him without bond. (*Id.* ¶ 7; Doc. No. 11-1 at 7.) Petitioner requested that determination be reviewed by an Immigration Judge ("IJ"). (*Id.* ¶ 7.)

On April 30, 2019, the IJ ordered that the request for a change in custody status be granted for Petitioner. (*Id.* ¶ 8; Doc. No. 11-1 at 19.) The IJ granted Petitioner release under a bond of $5,000, and both parties waived appeal on that order. (*Id.* ¶ 8.) Petitioner, however, did not pay the bond amount and remained in custody. (*Id.*) On July 19, 2019, the IJ ordered Petitioner removed to Nigeria. (*Id.* ¶ 9; Doc. No. 11-1 at 21.) On July 25, 2019, Petitioner appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA"), and on September 9, 2019, he appealed the IJ's custody order to the BIA. (*Id.* ¶¶ 10–11.)

Petitioner was transferred to the Kandiyohi County Jail in Wilmar, Minnesota, on September 25, 2019, due to overcrowding in Iowa and Nebraska. (*Id.* ¶ 12.) Petitioner's appeal of the IJ's custody order was rejected as untimely on November 6, 2019, and Petitioner moved for bond redetermination before the Fort Snelling, Minnesota

Immigration Court; that motion was also denied with the court finding no change in material circumstances. (*Id.* ¶¶ 14–16.) On December 19, 2019, the BIA dismissed Petitioner's case appeal, thereby allowing ICE to proceed with Petitioner's removal. (*Id.* ¶ 17; Doc. No. 11-1 at 88–90.)

On January 6, 2020, Petitioner filed a motion to reconsider his appeal with the BIA. (*Id.* ¶ 20.) The following day, ICE mailed a travel document request to the Nigerian Consulate in New York, NY. (*Id.* ¶ 21.) ICE regularly removes individuals to Nigeria – 286 individuals were removed to Nigeria in fiscal year 2019, and 102 have been removed there so far in fiscal year 2020. (*Id.* ¶ 28.) On January 28, 2020, the consulate informed ICE that a telephone interview with Petitioner was required; that interview was conducted on January 29, 2020, at the St. Paul ICE office. (*Id.* ¶ 22.) A second telephone interview was held on March 6, 2020, and subsequently the Nigerian consulate informed ICE that it will not issue a travel document while an immigration case is pending, and that the consulate regarded Petitioner's BIA appeal as a pending case. (*Id.* ¶¶ 23–25.) On April 1, 2020, ICE forwarded Petitioner's case to the attention of the Nigerian Embassy in Washington D.C., explaining that there are no current stays of removal. (*Id.* ¶ 27.) On April 29, 2020, the BIA denied Petitioner's motion to reconsider his appeal. (Doc. No. 13, Supplemental Kresser Decl. ¶ 4, Ex. A.)

Petitioner filed a Petition for a Writ of Habeas Corpus with the United States District Court on March 24, 2020, challenging his prolonged detention, and claiming the Nigerian consulate would not issue him a travel document because Petitioner has three minor children in the United States. (Habeas Pet. 7.) The Government filed its Response

3

on April 29, 2020. (Doc. No. 10, Resp.) Petitioner had until May 5, 2020, to file a Reply brief, but has not done so. (*See* Doc. No. 8, 3/30/20 Ord.)

## II.     Analysis

Petitioner challenges his ongoing "prolonged detention" pending his removal from the country.[1] (Habeas Pet. 2.) The Government responds that Petitioner's detention is presumptively constitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and, in the alternative, that the Habeas Petition should be denied because there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. (*See* Resp.)

### A.     The Habeas Petition is Premature

In *Zadvydas v. Davis*, the Supreme Court held that "an alien's post-removal-period detention" may not exceed "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. 678, 689 (2001). The Court elaborated that it is presumptively reasonable for the Government to detain an alien for six months following the start of the statutory removal period, after which the validity of continued

---

[1] In a subsequent filing (Doc. No. 9, Request to Restrain Removal), Petitioner attacks his removal order on the merits, but such an action may not be brought as part of a § 2241 habeas petition. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)."); *id.* § 1252(e)(2) (limiting habeas review to determination of whether a petitioner is an alien, whether a petitioner was ordered removed, whether a petitioner can prove that he is a lawfully admitted alien with permanent residence, was admitted as a refugee, or was granted asylum); *see Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007) ("[A] petition for review to the courts of appeal is the exclusive means of review of an administrative order of removal, deportation, or exclusion."). Consequently, this Court recommends Petitioner's Request to Restrain Removal (Doc. No. 9) be denied without prejudice.

detention depends on whether there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. An alien may seek conditional release after the six-month period expires by "providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' which then requires the government to 'respond with evidence sufficient to rebut that showing.'" *Ahmed v. Brott*, Civil No. 14-5000 (DSD/BRT), 2015 WL 1542131, at *3 (D. Minn. Mar. 17, 2015) (quoting *Zadvydas*, 533 U.S. at 701); *see also Williams v. Sessions*, Civil No. 18-2633 (DSD/SER), 2019 WL 234350, at *3 (D. Minn. Jan. 16, 2019). "The longer the alien's post-removal detention, the easier it is for him to satisfy his initial burden . . . because 'what counts as the reasonably foreseeable future shrinks as the period of prior postremoval detention grows.'" *Ahmed*, 2015 WL 1542131, at *3 (quoting *Zadvydas*, 533 U.S. at 701).

A petitioner seeking habeas relief from postremoval detention may not file a petition immediately – the petitioner must wait until after the presumptively-constitutional six-month period described in *Zadvydas* has expired. *See Gilo O. G. v. Barr*, No. 19-CV-1339 (PJS/DTS), 2019 WL 5057544, at *6–7 (D. Minn. Aug. 28, 2019) (citation omitted). A petition for habeas relief filed before the end of six-month period is premature and must be dismissed. *Victor D. v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-3354 (NEB/TNL), 2019 WL 2213893, at *2 (D. Minn. Apr. 12, 2019), *report and recommendation adopted*, No. 18CV03354NEBTNL, 2019 WL 2212148 (D. Minn. May 22, 2019) (citation omitted). The fact that six months may have elapsed by the time a petition is ruled on by the Court is not relevant to this analysis, the *Zadvydas* period must have expired before the petition is filed. *See Gilo*, 2019 WL 5057544, at *6–7; *Victor D.*,

5

2019 WL 2213893, at *2; *Mehighlovesky v. U.S. Dept. of Homeland Sec.*, 12-cv-902, 2012 WL 6878901 *2 (D. Minn. Dec. 7, 2012).

Here, Petitioner's postremoval period began to run on December 19, 2019 – the date the BIA dismissed his case appeal. (Kresser Decl. ¶ 17; Doc. No. 11-1 at 88–90.) Petitioner filed his Habeas Petition on March 24, 2020, just over three months later. (*See* Compl.) Therefore, because Petitioner filed his Habeas Petition well before the six-month period described in *Zadvydas* had run, this Court recommends that his Habeas Petition be dismissed without prejudice as premature. *Victor D.*, 2019 WL 2213893, at *2. This Court observes that if its recommendation is adopted by the District Court, Petitioner may file a new Habeas Petition immediately as the six-month *Zadvydas* period has now expired. *See Gilo O. G.*, 2019 WL 5057544, at *7.

### B.     Likelihood of Removal in the Reasonably Foreseeable Future

Even if the Habeas Petition was not premature, this Court would still recommend dismissal based on the record in this matter because Petitioner has thus far failed to demonstrate that he is unlikely to be removed to Nigeria in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

It is Petitioner's burden to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future. *Ahmed*, 2015 WL 1542131, at *3. Courts have found no significant likelihood of removal in five circumstances: (1) the detainee is stateless and no country will accept him; (2) the detainee's country of origin refuses to issue a travel document; (3) the United States does not have a repatriation agreement with the detainee's native country; (4) the political conditions in the detainee's country of origin render removal virtually impossible; and (5) the delay in issuing travel documents

6

warrants an inference that the documents will likely never issue. *Ahmed*, 2015 WL 1542131, at *3 (collecting cases); *Williams*, 2019 WL 234350, at *3.

Here, Petitioner claims that Nigeria has refused to issue him a travel document because he has minor children in the United States. (Habeas Pet. 7.) But Petitioner offers no further evidence to support this assertion, and it is contradicted by the affidavit of Kalob Kresser, a Deportation Officer with ICE and the Department of Homeland Security. Mr. Kresser states that the delay in issuance of a travel document for Petitioner was due to the Nigerian consulate's policy of not issuing travel documents while an immigration case is ongoing. (Kresser Decl. ¶ 25.) That obstacle, however, was removed on April 29, 2020, with the BIA's denial of Petitioner's motion to reconsider his appeal. (Supplemental Kresser Decl. ¶ 4, Ex. A.)

Moreover, the record demonstrates that ICE has been successful in its efforts to remove individuals to Nigeria over the past two years. (Kresser Decl. ¶ 28.) The record also demonstrates that ICE has acted diligently to move Petitioner's case along, has applied for a travel document, and has now contacted the Nigerian Embassy for additional assistance in effecting Petitioner's removal. (*Id.* ¶ 27.) Based on the record, this Court is satisfied that there is a significant likelihood of Petitioner's removal to Nigeria in the reasonably foreseeable future. *See Joshua H. v. Barr*, No. 18-CV-3357 (SRN/TNL), 2019 WL 3281645, at *3 (D. Minn. May 30, 2019), *report and recommendation adopted*, 2019 WL 3367945 (D. Minn. July 19, 2019), *appeal dismissed sub nom.*, *Henry v. Barr*, No. 19-2714, 2020 WL 625404 (8th Cir. Jan. 27, 2020) (concluding that removal is likely where the Government has applied for travel documents and the native country ordinarily accepts repatriation); *see also Jaiteh v.*

7

*Gonzales*, No. 07-cv-1727, 2008 WL 2097592, at *2–*3 (D. Minn. Apr. 28, 2008) (concluding removal is likely where "ICE has made diligent and reasonable efforts to obtain travel documents," and the native country "ordinarily accepts repatriation, and that country is acting on an application for travel documents"), *report and recommendation adopted*, 2008 WL 2074163 (D. Minn. May 14, 2008). Accordingly, the Habeas Petition should be denied.

### III.    Conclusion

For the foregoing reasons, this Court recommends that the Petition for a Writ of Habeas Corpus (Doc. No. 1) be dismissed and Request to Restrain Removal (Doc. No. 9) be denied without prejudice.

### RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DISMISSED** without prejudice;

2.    Petitioner's Request to Restrain Removal (Doc. No. 9) be **DENIED** without prejudice; and

3.    Judgment be entered accordingly.

Dated: June 30, 2020                    *s/ Becky R. Thorson*_____
                                        BECKY R. THORSON
                                        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).